IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

BENJAMIN DICKSON-EASON,

Petitioner,

vs.

BRANDON J. SMITH, Superintendent,
Greene Correctional Facility,

Respondent.

No. 9:19-cv-00455-JKS

MEMORANDUM DECISION

Benjamin L. Dickson-Eason, a New York state prisoner proceeding *pro se*, filed a

Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Dickson-

Eason is in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS") and incarcerated at Greene Correctional Facility.  Respondent has

answered the Petition, and Dickson-Eason has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

In April 2014, Dickson-Eason was charged with one count of second-degree burglary and

one count of fourth-degree grand larceny after a surveillance video showed a masked burglar

break into the hotel room of Ricardo Moore and leave with a lockbox.  When questioned by law

enforcement, Dickson-Eason denied involvement in the burglary but admitted that he went to

Moore's hotel room and took money from Moore, explaining that he had set up a $10,000 drug

buy for Moore and did not receive the $1,000 finder's fee he was promised.  Investigator

Santorio invited Dickson-Eason to the police station for further questioning, and Dickson-Eason rode to the station, while not in handcuffs, in the front seat of Santorio's vehicle.

Once they reached the police station, Dickson-Eason was brought into the interview room. Santorio later testified that, although he pressed the button on his recording device, he did not push it hard enough to turn it on. He additionally testified that, once he became aware that the device had not properly activated it, he turned the video recording on and the second half of his interview of Dickson-Eason was recorded. Santorio further testified that, prior to questioning, he read Dickson-Eason his *Miranda*[1] rights, and Dickson-Eason verbally indicated that he understood and continued talking to Santorio. Dickson-Eason then confessed that he had broken into and taken money from Moore's hotel room. After Moore refused Dickson-Eason's offer to return the money taken from the hotel room and indicated that he wished to press charges, Dickson-Eason was formally arrested and charged. According to Santorio, Dickson-Eason only asked for an attorney at the end of questioning, when he was being charged.

On July 31, 2014, the county court held a *Huntley*[2] hearing. Dickson-Eason testified that he knew Moore, was aware that his hotel room had been burglarized, and that Santorio never read him his *Miranda* warnings and had forced Dickson-Eason to admit to committing the burglary. The county court did not find Dickson-Eason credible and instead accepted Santorio's account of the interview. The court ruled that Dickson-Eason was given his *Miranda* warnings,

---

[1]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]      *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

he indicated he understood them, and he continued to speak.  The court therefore found Dickson-Eason's post-*Miranda* statements admissible and denied his motion to suppress them.

Dickson-Eason again appeared before the court about a week later, while represented by counsel, and expressed his intent to accept a plea agreement.  Under that agreement, Dickson-Eason would plead guilty to one count of second-degree burglary in exchange for a sentence as a second felony offender of no more than 10 years' incarceration with 5 years of post-release supervision.  The plea agreement also required a restitution order and that Dickson-Eason agree to waive his right to appeal.

Prior to accepting his guilty plea, the trial court confirmed that Dickson-Eason understood the plea agreement and had adequately discussed the agreement with his attorney.  Dickson-Eason agreed that he had "a full chance" and "enough time" to talk to his attorney and that he was "satisfied with the work [counsel] put in on his behalf."  Dickson-Eason confirmed that he had not been threatened or pressured into pleading guilty, nor had he been made promises, other than the agreed-upon sentence, in exchange for the plea.  He likewise acknowledged that he had not taken any medication, drugs, or alcohol, and that he was "thinking clearly" during the change-of-plea proceedings.  Dixon-Eason also confirmed his understanding of the rights he was giving up by avoiding trial.  The record further reflects that Dickson-Eason paused the proceedings multiple times to confer with counsel.

The court also explained that the plea agreement would require Dickson-Eason to "give up [his] right to have [the Court] consider any motions that [his] attorney has made or could have made" and "give up [his] right to any pre-trial hearings."  The court additionally stated, "And separate and apart and independent of those trial related rights you give up by virtue of the plea,

do you understand the plea bargain requires that you give up your right to appeal the conviction and the sentence and any and all other waive-able rights . . . ?" Dickson-Eason answered in the affirmative. Dickson-Eason also signed a written waiver of right to appeal. The court then recited the facts underlying the burglary charge, and Dickson-Eason admitted that he committed the burglary.

Roughly one month later, Dickson-Eason appeared with counsel for sentencing. His counsel, however, indicated that Dickson-Eason had refused to be interviewed for the presentencing investigation report and that there was a breakdown in the attorney-client relationship. Dickson-Eason orally moved to vacate his plea, and the court appointed a new attorney. The court adjourned the sentencing proceedings to allow Dickson-Eason an opportunity to make a formal motion.

The county court subsequently held a hearing on Dickson-Eason's withdrawal motion, at which plea counsel and Dickson-Eason both testified on Dickson-Eason's ineffective assistance claims. At the conclusion of the hearing, the county court found Dickson-Eason's guilty plea to be knowing and voluntary and that his former attorney had not rendered ineffective assistance. It thus denied Dickson-Eason's motion to withdraw the plea. The court subsequently sentenced Dickson-Eason in accordance with the plea agreement and as a second felony offender to a sentence of 10 years' incarceration to be followed by 5 years of post-release supervision.

Proceeding *pro se*, Dickson-Eason then moved pursuant to New York Criminal Procedure Law ("CPL") § 440.10 to vacate the judgment of conviction, arguing that his plea counsel was ineffective for failing to: 1) argue that the police coerced his inculpatory statements; 2) prove that Dickson-Eason was in custody when he gave his initial statements; 3) adequately

prepare for trial; and 4) impeach Santorio at the suppresion hearing.  County court denied the motion in a reasoned, unpublished opinion, finding that the claims were all record-based and thus could not be challenged in a § 440.10 motion, and that any non-record-based claims would still be denied on the merits.

Through counsel, Dickson-Eason also appealed his conviction, arguing that: 1) the county court erred in failing to suppress statements he made during a custodial interrogation, in violation of his *Miranda* rights; 2) his guilty plea was not knowing, voluntary, and intelligent; 3) his waiver of the right to appeal was invalid; and 4) his sentence is harsh and excessive.  The Appellate Division of the New York Supreme Court granted Dickson-Eason's application for leave to appeal the denial of his § 440.10 motion and considered the combined appeals on direct review.  The appellate court unanimously affirmed Dickson-Eason's judgment of conviction and affirmed the § 440.10 denial in a reasoned opinion issued on October 6, 2016.  *People v. Dickson-Eason*, 38 N.Y.S.3d 637, 640 (N.Y. App. Div. 2016).  Dickson-Eason sought leave to appeal on all claims raised in the Appellate Division.  The New York Court of Appeals summarily denied leave on December 20, 2016.  *People v. Dickson-Eason*, 73 N.E.3d 360, 360 (N.Y. 2016).

Dickson-Eason then filed a *pro se* application for a writ of error coram nobis on the grounds that appellate counsel failed to: 1) show Dickson-Eason surveillance video of the burglary; 2) argue that plea and sentencing counsel were ineffective for failing to give Dickson-Eason the hotel's surveillance video of the burglary; and 3) expand the record to include that video.  The Appellate Division summarily denied the motion.  Dickson-Eason sought leave to

appeal to the New York Court of Appeals, which was denied without comment on April 10, 2018.  *People v. Dickson-Eason*, 102 N.E.3d 1063, 1063 (N.Y. 2018).

Again proceeding *pro se*, Dickson-Eason filed a second motion to vacate his conviction pursuant to CPL § 440.10 on the ground that substitute counsel had been ineffective because he did not argue at the plea withdrawal hearing that Dickson-Eason's plea had not been knowing and voluntary because he had not viewed the hotel's surveillance video of the burglary prior to pleading guilty.  Dickson-Eason asserted that he had reviewed the video after his conviction and determined that he was not the person in the video, and asked counsel to mention the video in his motion to withdraw the plea.  County court denied the motion, finding that the claims had been considered and rejected on appeal.  The Appellate Division summarily denied leave to appeal that determination on January 10, 2019.

Dickson-Eason then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on April 3, 2019.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Dickson-Eason argues that: 1) plea counsel was ineffective for failing to show him the surveillance video of the burglary, and sentencing counsel was ineffective for failing to apprise Dickson-Eason of the video's significance; 2) the county court erred in refusing to allow Dickson-Eason to withdraw his guilty plea based on plea counsel's ineffectiveness; 3) the county court erred in denying Dickson-Eason's motion to suppress his statement to police; 4) appellate counsel was ineffective for failing to raise on appeal the ineffectiveness of plea and sentencing counsel; 5) Dickson-Eason is actually innocent

because the burglar depicted on the video does not resemble Dickson-Eason; and 6) the

prosecutor engaged in misconduct by prosecuting Dickson-Eason despite his "actual innocence."

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a

common term in the legal world. The Supreme Court has cautioned, however, that the range of

reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly

established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating

whether a rule application was unreasonable requires considering the rule's specificity. The

more general the rule, the more leeway courts have in reaching outcomes in case-by-case

determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are

beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed

to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    <u>Ineffective Assistance of Counsel</u> (Grounds 1, 4)

Dickson-Eason first argues that plea counsel was ineffective for failing to show him the

surveillance video of the break-in, and sentencing counsel was ineffective for failing to inform

him of the video's significance.  He similarly argues in Ground 4 that appellate counsel was

ineffective for failing to raise these issues on direct appeal.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one

in which "counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a

reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376,

1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at

393-95.  Thus, Dickson-Eason must show that his counsel's representation was not within the

range of competence demanded of attorneys in criminal cases, and that there is a reasonable

probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill*

*v. Lockhart,* 474 U.S. 52, 57 (1985)  An ineffective assistance of counsel claim should be denied

if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See*

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard.  "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)).  The difference is in the second prong.  Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different.  "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)).  "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588).  "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard.  *Turner*, 840 N.E.2d at 126.  "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New

York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id*. at 125.

Dickson-Eason's ineffective assistance claims must fail, however, even under the more favorable New York standard.  As an initial matter, a defendant who pleads guilty to a charged offense generally "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The *Tollett* bar also applies to "ineffective assistance claims relating to events prior to the guilty plea."  *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996); *see also People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).

By voluntarily pleading guilty (as discussed *infra*), Dickson-Eason forfeited his right to bring claims premised on actions that his counsel should have taken prior to the plea process, including his claim that plea counsel should have shown him the surveillance video.  The *Tollett* bar thus forecloses Dickson-Eason's ineffective assistance claims to the extent they relate to matters that arose prior to his guilty plea.

Nor can Dickson-Eason prevail on claims premised after his guilty plea.  Dickson-Eason contends that sentencing counsel was ineffective for failing to argue that Dickson-Eason's plea was involuntary because he did not view the surveillance video prior to entering his guilty plea. But he fails to show that such argument would have been successful–*i.e.*, that it would have led

the court to allow him to withdraw his guilty plea, in light of the facts that he admitted the factual basis of his crime when entering his plea, and had confessed and explained his motive to the police during the investigation.  The record supports that sentencing counsel, in moving to withdraw the plea, focused on the stronger argument that Dickson-Eason's plea was involuntary because he was unaware of his sentencing exposure.  Dickson-Eason fails to show that such strategy was defective, or that he was prejudiced by it.

Furthermore, Dickson-Eason fails to show that appellate counsel was ineffective because counsel did, in fact, argue that prior counsel were ineffective for failing to show Dickson-Eason the surveillance video.  Appellate counsel stated on direct appeal that counsel "did not show [Dickson-Eason] the surveillance video that purported to show the actual burglary taking place. Later viewing of that video showed that the perpetrator was a substantially larger person than Mr. Dickson-Eason."  Although that argument proved ultimately unsuccessful, appellate counsel cannot be faulted for its failure.  In sum, Dickson-Eason is not entitled to relief on any argument in advanced in support of his ineffective assistance claims.

B.    Erroneous Denial of Motion to Withdraw Guilty Plea (Ground 2)

Dickson-Eason next argues that the county court erred in refusing to allow him to withdraw his guilty plea as involuntarily obtained.  The Appellate Division considered and rejected this claim on direct appeal as follows:

> [Dickson-Eason] also argues that his plea was involuntary due to the ineffective assistance provided by former counsel prior to and at the time of the plea, and that his motion to vacate his plea should have been granted.  At the hearing on that motion, [Dickson-Eason] testified that counsel misled and misinformed him regarding his likely sentencing status, among other things, and failed to disclose evidence to him, and he claimed that he was innocent and only pleaded guilty to avoid a life sentence.  Supreme Court discredited these allegations based upon, among other factors, the transcript of the plea allocution and former counsel's contrary hearing testimony.  The record reveals that

> [Dickson-Eason] was adequately advised that persistent felony offender sentencing was possible, not mandatory, if he were convicted.
>
> Notably, "[i]n the context of a guilty plea, a defendant has been afforded meaningful representation when he or she receives an advantageous plea and nothing in the record casts doubt upon the apparent effectiveness of counsel" and the decision "[w]hether to permit a defendant to withdraw his or her plea of guilty is left to the sound discretion of [the trial c]ourt, and withdrawal will generally not be permitted absent some evidence of innocence, fraud or mistake in its inducement." Deferring to the court's credibility determinations, which are supported by [Dickson-Eason's] sworn statements during the plea allocution and counsel's testimony, we are persuaded that [Dickson-Eason's] guilty plea was a "knowing, voluntary and intelligent choice among alternative courses of action.". Further, in denying his motion to withdraw his plea, the court was entitled to rely on the record, which establishes that he received meaningful representation and fails to provide any basis for vacating the plea.

*Dickson-Eason*, 38 N.Y.S.3d at 639 (citations omitted).

When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

Upon independent review of the change-of-plea proceedings and the withdrawal motion hearings, the Appellate Division's determination that Dickson-Eason's plea was made voluntarily and intelligently is both reasonable and fully supported by the record. Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). To the extent Dickson-Eason challenges the testimony of his counsel

and presents a contrary version of the events surrounding his plea consideration, this Court must defer to the credibility determinations of the county court, who, being able to observe the witness demeanor and testimony first-hand, was in the best position to make such determinations. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).

Moreover, to the extent Dickson-Eason challenges his guilty plea on the basis of actual innocence, that claim must also fail. Notably, the Constitution allows a defendant to plead guilty while maintaining his innocence. *Edwards v. Carpenter*, 529 U.S. 446, 448 (2000); *see also No. Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding that a defendant "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime"). A "court can accept a guilty plea even when a defendant maintains his innocence, 'as long as there exists a strong factual basis for the plea.'" *United States v. Reingold*, 731 F.3d 204, 209 (2d Cir. 2013); *see also Oppel v. Meachum*, 851 F.2d 34, 35 n.2 (2d Cir. 1988) (per curiam) (stating that a trial court may "accept a guilty plea from a defendant who maintains his innocence where the court finds that there is a strong factual basis to support the crime charged, the plea of guilty is the result of an intelligent conclusion that the defendant's interests require entry of the guilty plea, and there is a benefit conferred on the defendant by virtue of the plea"). Here, Dickson-Eason did not maintain his innocence, but admitted his guilt under oath. Dickson-Eason is therefore not entitled to relief on any argument advanced in support of this claim attacking his guilty plea.

C.    Erroneous Denial of Suppression Motion (Ground 3)

Dickson-Eason additionally argues that the county court erred in denying his motion to suppress the inculpatory statements he made to law enforcement. As previously discussed, the

14

*Tollett* bar generally bars claims premised on events that occurred before the entry of a valid plea. *Tollett*, 411 U.S. at 267. However, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975). Pursuant to CPL § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite being convicted upon a guilty plea. *See United States ex rel. Sanney v. Montanye*, 500 F.2d 411, 414 (2d Cir. 1974) (holding that habeas petitioner did not waive by guilty plea constitutional claims arising from "illegal interrogation," including a claim challenging admissibility of statements made without *Miranda* warnings). Accordingly, the *Tollett* bar does not preclude consideration of this claim here.

The claim is nonetheless procedurally barred from federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). Where a state-court holding contains a plain statement that a claim is procedurally barred, the federal habeas court may not review it, even if, as here, the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision"); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

15

Here, the Appellate Division concluded that appellate review of Dickson-Eason's challenge to the suppression decision was "precluded by his knowing, voluntary and intelligent waiver of appeal." *Dickson-Eason*, 38 N.Y.S.3d at 638.  New York courts regularly enforce appeal waivers to bar appeals of issues encompassed by a valid waiver.  *See, e.g.*, *People v. Lopez*, 844 N.E.2d 1145, 1150 (N.Y. 2006); *People v. Marrero*, 661 N.Y.S.2d 1015 (N.Y. App. Div. 1997).

As with plea bargains generally, a waiver of appeal is constitutionally valid if it is knowingly and voluntarily made.  *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). Under New York law, for a waiver of appeal to be knowingly and voluntarily made the record "must establish that the defendant understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty . . . ."  *People v. Lopez*, 844 N.E.2d 1145, 1149 (N.Y. 2006).  To the extent that Dickson-Eason argues here, as he did on direct appeal, that the waiver of his right to appeal did not satisfy this state-law requirement, such argument does not warrant federal habeas relief.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*,

455 U.S. 209, 221 (1982)) (internal quotation marks omitted).  Federal habeas relief is therefore

unavailable for alleged errors of state law.  *Estelle*, 502 U.S. at 67.

In any event, the record reflects that Dickson-Eason specifically acknowledged during

the plea colloquy that he understood that he was waiving his right to appeal, which was separate

and distinct from those rights given up by avoiding trial, and signed a written waiver.  The

record thus fully supports the Appellate Division's finding that Dickson-Eason's waiver of his

right to appeal was valid.  Consequently, Dickson-Eason's claim is procedurally barred from

federal habeas review here.  *See Krouth v. Amoia*, No. 15-cv-6616, 2018 WL 1523627, at *7

(W.D.N.Y. Mar. 28, 2018); *Alvarez v. Yelich*, No. 09-CV-01343, 2012 WL 2952412, at *5

(E.D.N.Y. July 17, 2012) ("Courts in this circuit have consistently held that a petitioner's waiver

of the right to appeal is an adequate and independent state ground for denying habeas corpus

relief." (collecting cases)).  Dickson-Eason is therefore not entitled to relief on this ground

either.

D.      <u>Actual Innocence/Malicious Prosecution</u> (Grounds 5, 6)

Finally, Dickson-Eason claims that he is actually innocent of the crime for which he pled

guilty and that the prosecutor knew that he was innocent and unlawfully prosecuted him anyway.

He has not, however, presented these claim to the state courts.  This Court may not consider

claims that have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see*

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires

the petition to fairly present federal claims to the state courts in order to give the state the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *Duncan v.*

*Henry*, 513 U.S. 364, 365 (1995).  A petitioner must alert the state courts to the fact that he is

asserting a federal claim in order to fairly present the legal basis of the claim.  *Id.* at 365-66.  An

issue is exhausted when the substance of the federal claim is clearly raised and decided in the

state court proceedings, irrespective of the label used.  *Jackson v. Edwards*, 404 F.3d 612, 619

(2d Cir. 2005).  To be deemed exhausted, a claim must also have been presented to the highest

state court that may consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999).  In New York, to invoke one complete round of the State's established appellate process,

a criminal defendant must first appeal his or her conviction to the Appellate Division and then

seek further review by applying to the Court of Appeals for leave to appeal.  *Galdamez v. Keane*,

394 F.3d 68, 74 (2d Cir. 2005).  Further, "when a 'petitioner failed to exhaust state remedies and

the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred,' the federal habeas court

should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d

Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Because these claims appear to be based on evidence outside the record, as it does not

appear that the surveillance video was part of the state court record, Dickson-Eason may still be

able to bring them in a motion to vacate judgment under CPL § 440.10 because there is no time

limit or number cap on § 440.10 motions.  But even if Dickson-Eason could still exhaust these

claims in state court, the Court cannot stay the Petition and allow him to return to state court to

satisfy the exhaustion requirements.  *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001).

Dickson-Eason has not requested that this Court stay and hold his Petition in abeyance.

Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition

pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all

available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Here, these unexhausted claims are plainly meritless.  While a federal habeas petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome the AEDPA's one-year statute of limitations, *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013), the Supreme Court has not resolved whether a non-capital prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence, *McQuiggin*, 133 S.Ct. at 1931; *see House v. Bell*, 547 U.S. 518, 554-55 (2006); *Dist. Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009).  The Supreme Court has instead declined to answer the question, noting that where a "[p]etitioner has failed to make a persuasive showing of actual innocence[,] . . . the Court has no reason to pass on, and appropriately reserves, the question whether federal courts may entertain convincing claims of actual innocence." *Herrera v. Collins*, 506 U.S. 390, 427 (1993) (O'Connor, J., concurring).  Although the Second Circuit has also not ruled on whether a claim of actual innocence is cognizable on habeas review, *see Friedman v. Rehal*, 618 F.3d 142, 159 (2d Cir. 2010) (citing *Osborne*, 557 U.S. at 71, and noting that whether an actual innocence claim is cognizable is an open question), it has "come close" to granting habeas relief on grounds of actual innocence, *see DiMattina v. United States*, 949 F. Supp. 2d 387, 417 (E.D.N.Y. 2013) (citing cases).

Assuming, but not deciding, that a freestanding actual innocence claim is cognizable in a § 2254 proceeding, the Supreme Court has described the threshold showing of evidence as "extraordinarily high." *Herrera*, 506 U.S. at 417.  "The sequence of the Court's decisions in *Herrara* and *Schlup*—first leaving unresolved the status of freestanding claims and then

establishing the gateway standard—implies at the least that *Herrara* requires more convincing proof of innocence than *Schlup*." *House*, 547 U.S. at 555.

Measured against this standard, Dickson-Eason has fallen far short of establishing his actual innocence.  In support of this claim, Dickson-Eason relies on the surveillance video, which he has submitted to this Court.  *See* Docket No. 22.  The Court has independently reviewed the video, however, and, contrary to Dickson-Eason's assertions, the video does not exonerate him.  The video shows a fully-masked individual wearing a puffy, oversized jacket and hood, break into a hotel room many feet away.  Although Dickson-Eason says that the individual in the video does not resemble him, the quality of the video and the mask and coat on the individual make it impossible to rule out the possibility that it is Dickson-Eason, particularly given that he admitted his guilt both to law enforcement and under oath, and pled guilty to the crime.

Dickson-Eason may be complaining that, due to the quality of the video, the value of the evidence against him is not as strong as he had believed it to be at the time he entered his plea because it does not conclusively identify him either.  But "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal brackets omitted).  Moreover, a guilty plea is not invalidated simply because a defendant re-evaluates the government's case against him.  *See United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir. 1985).

Similarly, because Dickson-Eason fails to show that he is actually innocent of the burglary, he fails to show that the prosecution knew that he was innocent, or that its prosecution of him was malicious.  Dickson-Eason is thus not entitled to relief on either of these grounds.

## V. CONCLUSION

Dickson-Eason is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 10, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge